YOUTUBE AGREEMENT

This YouTube Agreement ("**Agreement**") is made on Mar 20 2025 ("**Effective Date**") by and between:

DM Operations, Inc.("**Lender**"), a corporation incorporated under the laws of New York with the registered business address of 27 GLENDALE AVENUE, STATEN ISLAND, NY, UNITED STATES, 10304 and business registration number ▬▬▬▬▬▬▬ f/s/o Mikahil Varshavksi ("**Doctor Mike**"); and

**Airthings America, Inc.**, a corporation, incorporated under the laws of Delaware with registered business address of 9 Main Street, Ste 2-F, Sutton, MA 01590 ("**Airthings**").

Lender and Airthings are individually referred to herein as a "Party" and collectively as the "Parties."

WHEREAS, Doctor Mike is a practicing board certified family medicine doctor and owner of the YouTube Channel, www.youtube.com/@DoctorMike, with approximately 12.8 million subscribers.

WHEREAS, Airthings and its affiliates provides radon and indoor air quality monitoring products and services that assist its customers in remotely monitoring and optimizing the air quality in indoor environments;

WHEREAS, Doctor Mike desires to create a video with the topic centered around how air quality impacts people's health and why it is important to track air quality, in the same manner as tracking sleep and exercise;

WHEREAS, Airthings desires to contribute to the video with relevant information about air quality, including suggested talking points and advertising talking points; and

WHEREAS, Doctor Mike is willing to include a 60-second advertisement read for Airthings' products and services during the course of the video.

This Agreement sets forth the terms and conditions for the cooperation between Doctor Mike and Airthings.

1    DEFINITIONS

1.1   "**Video**" means the video created by Doctor Mike pursuant to this Agreement.

1.2   "**Intellectual Property Rights**" means any copyrights, trademarks, service marks, trade secrets, patents, patent applications, moral rights, contractual rights of non-disclosure or any other intellectual property or proprietary rights, however arising, throughout the world.

1.3   "**Term**" shall have the meaning defined in Section 10.

2    OBLIGATIONS OF THE PARTIES

2.1   During the Term of the Agreement, Doctor Mike shall:
   i)   provide the Video in a suitable form and in the manner agreed with Airthings, including:
      a. the Video's topic to be centered around how air quality impacts people's health and why it is important to track air quality, in the same manner as tracking sleep and exercise;
      b. the Video to include a 60-second advertisement read for Airthings' products and services;
      c. the Video to include mutually agreed talking points relevant to air quality, which will appear within the first 50% of the Video;
      d. the Video description to include a trackable link (with UTM parameters) that is

        provided by Airthings; and
- e. the Video's title and thumbnail will be created in Doctor Mike's discretion.
- f. Doctor Mike is unable to work with another Radon monitoring company, for the duration of the Term

ii) (except to the extent incorporating materials provided by or on behalf of Airthings) be solely responsible for ensuring that the Video complies with applicable laws, regulations, YouTube terms and guidelines, etc., that it does not, to the best of Lender's knowledge, infringe any third party's Intellectual Property Rights, and that it is not offense, vulgar or obscene;

iii) provide readily available reporting and video performance analytics as requested by Airthings in writing, including views, engagement metrics, and click-through rates for the Airthings trackable link at least 2 times during the Term of the Agreement and at last one time after the conclusion of the Agreement;

iv) ensure that the Video is completed and live on a mutually agreed date, not later than June 31, 2025 ("Long Stop Date"). In the event the Video is not live by the Long Stop Date, any payments that were made by Airthings shall be refunded in full;

v) not make unverified claims about Airthings or its products or services; and

vi) notify Airthings in writing at least 14 days before posting the Video.

2.2    During the Term of the Agreement, Airthings and its affiliates shall be entitled to:
i) collaborate with Doctor Mike to provide suggested advertising talking points and key talking points for the Video;
ii) have mutual approval over the talking points, and 60 second ad-read;

iii) Airthings and its affiliates may use Doctor Mike's name, approved likeness, and the branded segment of the Video, including clips, on its social media channels for organic purposes. This use is allowed for 30 consecutive days from the Video posting date (the 'Initial Term'), as specified in section 3.1(a). Usage is strictly limited to the integration portion of the footage.

iv) Subject to the payment of the fee specified in Section 3.1(c), promote the Video and any of its contents and clips, as well as Doctor Mike's name and approved likeness through paid social media channels (i.e., whitelisting and boosting) for 30 days corresponding with the time period specified in section 2.2(iii) (i.e. paid content use).

v) create a landing page to direct users who click the link in Doctor Mike's video description.

2.3    Prior to the Effective Date, Airthings sent Doctor Mike three Airthings' products (View Plus, View Radon, and Renew) for his personal use, at no cost.

3    FEES AND PAYMENT

3.1    Airthings shall pay to Lender the following fees:
(a) $110,000 for the Initial Term for organic content use (30 consecutive days beginning on the date Doctor Mike posts the Video) and creation of the Video;
(b) Optional $10,000 for an additional 30 days of organic content use after the Initial Term, if Airthings elects to use such additional 30 days for organic content use. Doctor Mike will issue his invoice for such amount on the first day after the Initial Term if Airthings elects to use such additional 30 days; and
(c) An additional, optional $30,000 for 30 days of paid social media use (i.e., whitelisting and boosting) to correspond to the time period referred to in 2.2(iv), if Airthings chooses to engage in paid social media use. Doctor Mike will issue his invoice for such amount on the first day after the Initial Term if Airthings elects to engage in paid content use.

3.2    For the avoidance of doubt, there will be no revenue-sharing arrangement between Airthings and Doctor Mike under this Agreement, including no revenue sharing for Airthings' product sales through the trackable link.

3.3   Airthings shall pay the fee specified in Section 3.1(a) as follows: (i) 50% upon Lender's execution of this Agreement and (ii) 50% upon completion of the services hereunder. Airthings shall pay the fees in Section 3.1(b) and 3.1(c) (if applicable) to Lender within thirty (30) days of receipt of Lender's applicable invoice. Payment shall be made by wire transfer to the bank account specified on such invoices within thirty (30) days for receipt. Doctor Mike will send his invoices to the following billing email address, 993092045@autoinvoice.no and david.pomfret@airthings.com, or such other email address as Airthings may specify from time to time.

4   WARRANTIES

4.1   Each Party represents and warrants that it has and will retain during the Term hereof, all right, title and authority to enter into this Agreement, and to perform all of its obligations under this Agreement.

4.2   Lender warrants that, during the Term, the Video it provides pursuant to the Agreement (except to the extent incorporating materials provided by or on behalf of Airthings) will (a) be provided in a good and workmanlike manner with at least the same degree of skill and competence normally practiced by professionals providing the same or similar services; (b) comply with all applicable laws of which Lender is aware; (c) not, to the best of Lender's knowledge, infringe or otherwise violate the copyright, trademark or other Intellectual Property Rights of any third-party; and (d) not contain any material that is unlawful, defamatory, discriminatory or which promotes or facilitates, illegal activity, violence, discrimination, or infringement of any Intellectual Property Rights. Lender shall indemnify and hold Airthings and its affiliates harmless from any and all liability, claims, losses, obligations, costs, damages and/or expenses (including, without limitation, attorneys' fees and court costs) arising out of or in connection with any third party claims relating to: (i) infringement regarding the Video, and such allegations are not related to information or materials provided by or on behalf Airthings, (ii) Doctor Mike/Lender's breach of this Agreement; (iii) Doctor Mike/Lender's gross negligence or willful misconduct; (iv) the services provided under the Agreement ..

4.3   Airthings shall indemnify and hold Lender and Doctor Mike harmless from any and all liability, claims, losses, obligations, costs, damages and/or expenses (including, without limitation, attorneys' fees and court costs) arising out of or in connection: (i) Airthings' breach of this Agreement; (ii) Airthings' negligence or willful misconduct; (iii) materials provided to Lender and/or Doctor Mike by or on behalf of Airthings; (iv) Airthings' services or products (including product liability claims).

5   CONFIDENTIALITY AND PUBLICITY

5.1   For purposes of this Agreement, "Confidential Information" shall mean non-public information that a Party or its Affiliates ("disclosing Party") discloses to the other Party or its Affiliates ("receiving Party") which is designated as being 'proprietary' or 'confidential' or which by its nature or the circumstances reasonably ought to be treated as confidential. Confidential Information includes the disclosing Party's products, software and prototypes and information relating to the disclosing Party's business affairs, including business methods, marketing strategies, pricing, competitor information, product development strategies, and financial results. Confidential Information does not include information which (a) is known by the receiving Party, free of any obligation to keep it confidential; (b) is at the time of disclosure, or thereafter becomes, publicly available through no wrongful act of the receiving Party; (c) is independently developed by the receiving Party, without relying on or referring to the Confidential Information of disclosing Party; or (d) is approved for release by prior written authorization of the disclosing Party.

5.2   Neither Party shall disclose the other Party's Confidential Information to any third party or use Confidential Information for any purpose other than for the proper fulfillment of this Agreement. Each Party undertakes to safeguard the Confidential Information of the other Party with the same degree of care as it would apply to its own Confidential Information and,

in any case, with no less than reasonable care. Such obligations will survive the expiration of this Agreement. Notwithstanding anything to the contrary herein, it shall not be construed as a breach of this Agreement if Lender (or Doctor Mike) discloses Confidential Information to its professional representatives or discloses Confidential Information in order to comply with any law, court order or subpoena.

6    TERM AND TERMINATION

6.1   The Agreement shall commence on the Effective Date and continue for an initial term of 30 consecutive days following the date Doctor Mike posts the Video ("Initial Term"), unless terminated earlier as provided in this Section 6 or unless Airthings extends its usage rights pursuant to Section 3.1(b) (such extended period, the "Additional Term"). The Initial Term and the Additional Term shall constitute the "Term" of this Agreement.

6.2   This Agreement may be terminated by either Party prior to the end of the Term if the other Party is in material breach of any term or condition of this Agreement and such breach is not remedied for a period of thirty (30) days after the Party in breach has been notified in writing of such breach by the other Party.  For the avoidance of doubt, in the event Airthings terminates this Agreement without cause (i.e., for convenience), Airthings shall within seven (7) days of any such termination pay Lender any unpaid portion of the fees due hereunder to Lender.

6.3   This Agreement terminates automatically, with no further act or action of either Party, if a receiver is appointed for a Party or its property, a Party makes an assignment for the benefit of its creditors, goes bankrupt or is liquidated or dissolved.

6.4   Upon termination or expiration of this Agreement:
   i)    Each Party shall return to the other Party or destroy (if so authorized in writing by the other Party) any Confidential Information in the Party's possession or control, and cause an officer to certify in writing to the other Party that it has done so;
   ii)   Each Party shall forthwith cease all use (if any) of the trademarks and intellectual property provided by the other Party hereunder; and
   iii)  Each Party's payment obligations as well as Sections 1, 4, 5, 6.4, 7, and 8 shall survive termination of this Agreement.

7    LIMITATION OF LIABILITY

7.1   Neither Party shall be liable to the other Party in contract, tort or otherwise, whatever the cause, for any loss of profit, business or goodwill or any indirect, incidental or consequential costs, damages or expenses of any kind, except for such loss attributable to breach of confidentiality.

7.2   In no event will either Party's total cumulative liability for all claims arising out of or related to this Agreement exceed USD 250,000, except for liability for claims arising out of: (i) either Party's breach of its confidentiality obligations under Section 5 or warranty obligations under Section 4 above; (ii) liabilities that cannot be limited by law; (iii) liabilities covered by the applicable Party's indemnification obligations. The Parties agree that this Section 7 reflects a reasonable allocation of risk and that each Party would not enter into this Agreement without these limitations on liability.

8    MISCELLANEOUS

8.1   <u>Headings and Preamble</u>. The headings and preamble of this Agreement are for ease of reference only and shall not constitute a part of this Agreement for any purpose or affect its interpretation.

8.2   <u>Intellectual Property Rights</u>. Nothing in this Agreement shall be deemed or construed as an assignment by a Party of any of its Intellectual Property Rights to the other Party.

8.3 <u>Force majeure</u>. Neither Party shall be responsible for any failure to perform due to unforeseen circumstances or to causes beyond that Party's control, including but not limited to acts of God, war, terrorism, riot, embargoes, acts of civil or military authorities, fire, floods, accidents, strikes, or shortages of energy, labor or materials. In the event of any such circumstances, the defaulting Party shall be excused for a period equal to the time of the delay caused thereby.

8.4 <u>Assignment</u>. This Agreement may not be assigned or transferred by either Party without the other Party's written consent, which shall not be unreasonably withheld, provided that consent shall not be required in connection with the reorganization or merger of a party or the transfer of such party's business or all or substantially all of its assets to a third party.

8.5 <u>Severability. Waiver</u>. If any provision of this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect. The Parties agree to replace any invalid provision with a valid provision, which most closely approximates the intent and commercial effect of the provision held to be invalid. The waiver by either Party of a breach of any provision of this Agreement will not operate or be interpreted as a waiver of any other or subsequent breach.

8.6 <u>Relationship of the Parties</u>. The Parties are independent contractors. Nothing in this Agreement will be deemed to create an agency, employment, partnership, fiduciary or joint venture relationship between the Parties.

8.7 <u>Data protection</u>. Both Parties agree to comply with data protection and privacy laws applicable to their respective activities pursuant to this Agreement.

8.8 <u>Entire Agreement</u>. This Agreement, including the appendices, constitutes the entire agreement between the Parties hereto and supersedes all other agreements between the Parties in relation to the subject matter of this Agreement. The Agreement cannot be modified, supplemented or rescinded except in writing signed by both Parties. The Parties confirm that they have not entered into this Agreement on the basis of any representation that is not expressly incorporated into this Agreement. However, this shall not apply to any statement, representation or warranty made fraudulently or to any provision of this Agreement that was induced by fraud so that nothing in this Agreement shall affect the remedies available to the Parties in respect of any fraudulent matters.

8.9 <u>Governing Law; Arbitration</u>. This Agreement will be governed by and construed in accordance with the laws of the State of New York regardless of the laws that might otherwise govern under applicable principles of conflicts of law. Any legal proceeding relating to this Agreement or to the enforcement of any provision of this Agreement may be brought or otherwise commenced in any state court located in the city of New York, State of New York (and each appellate court located in such county), or in the federal courts located in the city of New York, State of New York (and each appellate court located in the city of New York, State of New York) (all of the foregoing collectively, the "New York Courts").  The parties:  (i) expressly and irrevocably consent and submit to the jurisdiction of the New York Courts, in connection with any such legal proceeding; (ii) agree that each of the New York Courts, shall be deemed to be a convenient forum; and (iii) agree not to assert (by way of motion, as a defense or otherwise), in any such legal proceeding commenced in any of the New York Courts, any claim that such party is not subject personally to the jurisdiction of such court, that such legal proceeding has been brought in an inconvenient forum, that the venue of such action or proceeding is improper or that this Agreement or the subject matter of this Agreement may not be enforced in or by such court.

8.10 <u>Counterparts</u>. This Agreement may be executed in multiple counterparts (*e.g.*, PDF, DocuSign or other electronic format), each of which shall be deemed an original and all of which taken together shall constitute one and the same Agreement.

ACCEPTED AND AGREED TO BY:

| DM OPERATIONS, INC. | Airthings America, Inc. |
|---|---|
| By: _____ Signed by: V CCB1F1D6DD2D41C... _____ | By: _____ |
| Name: Mike Varshavski | Name: Chloe Waller |
| Title: Ceo | Title: |
| Date: 4/1/2025 | Date: _____ |